

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable J. H. Bickett, Chairman
Board of Regents of The University of Texas
Telephone Building
Dallas, Texas

Dear Mr. Bickett:     Opinion No. O-5252

Re: Validity of Section 3, Chapter
I, Part II, of the Rules and
Regulations of the Board of
Regents for the government of
The University of Texas, adopt-
ed March 14, 1936.

We have your letter of April 21, 1943, requesting
an opinion upon the following questions, involving Section 3,
Chapter I, Part II, of the Rules and Regulations of the Board
of Regents for the government of The University of Texas:

"1.     Do the provisions of the fifth paragraph
of the above quoted rule, providing that the term
of service of a professor or associate professor
shall extend during good behavior and satisfactory
service, constitute a legal obligation on the part
of the University to a professor or associate pro-
fessor employed while this rule is in effect?

"2.     Do the provisions of the eighth paragraph
of the above quoted rule, with reference to the pro-
cedure of a hearing or trial before a committee of
the faculty, constitute a limitation upon the statu-
tory powers and duties of The Board of Regents, so
as to render such provisions invalid?

"3.     Do the provisions of the eighth paragraph
of the above quoted rule, with reference to the pro-
cedure of a hearing or trial before a committee of
the faculty, confer upon a professor or associate pro-
fessor, employed while this rule is in effect, a

legal right to the benefit of those procedural provisions as a condition precedent to removal or dismissal by the Board of Regents?

"4. Is Section 3, Chapter I, Part II, of The Rules and Regulations of The Board of Regents, adopted March 14, 1936, invalid?"

The Section of the Rules to which the questions relate provides:

"Sec. 3. TENURE AND PROMOTION.—The Board has the power, which it cannot waive (Revised Civil Statutes, 1925, Article 2595), to remove any professor, instructor, tutor, or other officer or employee connected with the University when in its judgment the interests of the University shall require it.

"The Board, however, desires to retain all members of the staff who are rendering efficient service and desires to promote, on recommendation of the President, as merit warrants and circumstances permit.

"It is also the intention of the Board, if possible, to direct the policies of the University and exercise control over its affairs in a manner that will cause all competent and progressive teachers to feel secure and independent in their positions. It is the desire of the Board to secure teachers who will search for truth and seek wisdom.

"Appointment or promotion to a particular rank or salary does not imply any obligation to promote to a higher rank or salary at a later date.

"Unless specifically stipulated otherwise in advance, and subject to the conditions set forth in the following Section, the term of service of a professor or an associate professor shall extend during good behavior and satisfactory service.

"Unless otherwise specifically provided, the term of service of an assistant professor shall be two years, beginning and ending in odd-numbered years,

Honorable J. H. Bickett - page 3

and that of an instructor shall be one year.
When possible, at least three months' notice
shall be given of intention not to reappoint
an assistant professor or instructor, but
failure of the University to give such notice
shall not constitute reappointment. In general,
reappointments and notices of intention not to
reappoint shall follow the same official routine.

"(See Chapter V, Section 2.)

"The term of service of all other members
of the staff shall ordinarily be specifically
stated in the letter of appointment from the
Secretary of the Board or on the employment
nomination blank sent to the President and
when not so stated shall be understood to be
for a term of one year. An employment blank
for every employee not named in the Regents'
budget shall be filed with the President un-
less the employment is of a very minor and
temporary nature.

"A professor or associate professor may be
summarily suspended for grave cause pending in-
vestigation but will not be dismissed against
his will except for cause stated in writing and
until a special advisory committee of five mature
and judicially-minded members of the General Fac-
ulty, appointed by the President for the purpose,
shall have heard him fully, investigated all of
the relevant facts, arrived at findings and recom-
mendations, and submitted a full written statement
to the Complaint and Grievance Committee of the
Board of Regents. This Committee, together with
the whole Board, will give serious consideration
to the findings and recommendations of the Faculty
Committee before any possible exercise of the
power of dismissal.

"A member of the teaching or non-teaching
staff other than a professor or associate professor
may be suspended summarily for gross misconduct but
will not be dismissed during his term of appoint-
ment except as the result of an objectively equit-
able procedure that regularly includes the right to
appear, accompanied by a person chosen by him, be-

Honorable J. H. Bickett - page 4

fore the Complaint and Grievance Committee of the
Board of Regents, or before a special committee of
the faculty selected by and acting for the Com-
plaint and Grievance Committee of the Board.

"Appointments to serve in the Summer Session
shall be made annually at specified salaries for
specified periods. As a consequence, in the Sum-
mer Session there are no promotions, and tenure
does not extend beyond the period specified. Mem-
bers of the Faculty of the Summer Session who are
not also members of the Faculty of the Long Session
are not members of the Budget Council of their re-
spective departments. (See Chapter IV, Section 6.)"

Article 2536, Revised Civil Statutes of 1925, pro-
vides:

"The regents shall have power to remove any
professor, tutor or other officer connected with
the institution, when, in their judgment, the
interest of the University shall require it."

At the outset, it should be observed that, as we
interpret it, the Rule does not purport to create contract-
ual obligations upon the Board to follow its provisions. As
any other written instrument, the Rule must be interpreted
as a whole, rather than by lifting from the general context
isolated sentences and paragraphs.

When the Rule is read and construed in the light
of the first three paragraphs therein, it is apparent that
its provisions are merely designed to express the present
policy of the Board and do not undertake to impose a legal
obligation upon it to continue that policy. The statement
in the first paragraph that the Board can not waive its
statutory power to remove, plus the expressions of the
"desire" and "intention" of the Board, are utterly incon-
sistent with an intention to create a contractual obliga-
tion or confer a legal right.

If the provisions of the fifth and eighth para-
graphs of the Rule, however, be construed as attempting to
create contractual obligations, or to confer legal rights
to the benefit of the provisions therein contained, such
attempt is without legal effect. Article 2536 vests in the

Honorable J. H. Bickett - page 5.

Board of Regents a continuing power of government over the affairs of The University of Texas -- the power to remove any professor or officer whenever the interests of The University, in the opinion of the Board, shall require. It is a familiar principle of law that public officers may not by contract or rule cede away or diminish the powers of government confided to them. (City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 143). Upon this principle, the tenure provisions of the Rule can not limit the statutory powers of the Board, and, upon the same ground, no legal right to the benefit of the procedural provisions is or can be created. The power of judgment and action which the Board possesses is not exhausted or impaired by the formulation of the Rule; it is continuing in nature, so that the policy formulated by the Board today may be changed or departed from tomorrow, if the Board's judgment is that the interests of The University require a change of policy or a departure in a particular instance from the policy established. (State v. Board of Regents, 209 Wis. 33, 244 N. W. 618; Collins v. City of Lewiston, 107 Me. 220, 77 A. 334; State v. Layton, 28 N.J.L. 244. See, also, Frazen v. Goose Creek Independent School District, (CCA), 148 S. W. (2) 460).

Your first three questions, therefore, are answered in the negative.

It is suggested that the procedural provisions of the eighth paragraph of the Rule constitute an invalid delegation of the Board's power. It is fundamental that public officers, in the absence of express authority, may not delegate to others the discharge of powers and functions involving the exercise of judgment and discretion. Though the Board's power to remove is of that character, it is apparent that the Rule does not attempt its delegation. The Rule states that the Board "will give serious consideration" to the findings and recommendations of the faculty committee. This language plainly implies that the findings and recommendations of the committee are not to bind the Board, but are only advisory in character.

Article 2536 vests in the Board of Regents of The University of Texas the discretion to determine what action the "interests of the University" may require from time to time. The Board, in the exercise of its judgment and discretion, may well determine that the establishment and maintenance of a "University of the first class" (the constitutional objective) requires that the Board follow the policy of

continuing in service those professors and officers whose conduct has been exemplary and whose services have been satisfactory. The Board likewise may reasonably conclude that it should not exercise its power of dismissal arbitrarily, but should pursue the policy of making a full investigation and according the privilege of being heard in their own defense to those whose removal for cause is under consideration. It can not be said that such policy has no reasonable tendency to foster "the interests of The University". Human experience amply justifies the observation that the utmost in faithful and efficient service is not to be expected from men who know that their reward may well be arbitrary dismissal.

If the Board in fact pursues this policy (and that it may do so is beyond dispute), no logical reason may be assigned for denying it the power to declare its policy in its rules. That the Rule does not and can not impose a binding legal obligation, or create a legal right, does not establish its invalidity; it is fully effective for the purpose for which, as we construe it, it was intended -- that of publicly recording the Board's views and policy as applied to the removal of professors and officers.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

R. W. Fairchild
Assistant

RWF-MR

APPROVED MAY 5, 1945

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS